**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DRITAN DUKA,<br><br>               Plaintiff,<br><br>               v.<br><br>WILLIAM MARSHALL,<br>Director, Federal Bureau of Prisons,<br><br>               Defendant. | Civil Action No. 25-3111 (BAH)<br><br>Judge Beryl A. Howell |

**MEMORANDUM OPINION**

Plaintiff Dritan Duka, an inmate housed in the Communication Management Unit ("CMU") at a Federal Correctional Institution ("FCI"), brings this suit against William Marshall, in his official capacity as Director of the Federal Bureau of Prisons ("BOP"), challenging the denial of plaintiff's request to have an unmonitored telephone call with his attorney. Citing 28 C.F.R. § 540.204(b) as the basis for the denial, the FCI's counsel explained that such calls are permitted only when other means of communication are inadequate due to an urgent or impending deadline in an active legal proceeding. Raising First and Fourteenth Amendment claims, plaintiff brings facial and as-applied challenges to 28 C.F.R. § 540.204(b), and seeks prospective injunctive relief in the form of "unmonitored calls with his attorneys at least once a month, with the possibility of more frequent access if necessary in a particular situation." Complaint ("Compl.") (Relief Requested), ECF No. 1. Defendant has moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of standing, as well as Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons discussed below, defendant's motion is granted in part and denied in part.

1

I. **BACKGROUND**

Following a brief review of the legal framework governing monitoring of federal inmates' communications in the context of this case, the factual and procedural history of this matter is summarized.

A. **Legal Framework**

"In 2006 and 2008, respectively, the BOP established two CMUs in its facilities in Terre Haute, Indiana and Marion, Illinois." *Aref v. Garland*, No. 20-5368, 2022 WL 605726, at *1 (D.C. Cir. Feb. 25, 2022). Housing "inmates who present security risks [and] require heightened monitoring," *Aref v. Lynch*, 833 F.3d 242, 247 (D.C. Cir. 2016), the CMUs were established "to address a deficiency in the Department of Justice's ability to monitor inmates with terrorism-related convictions and their communications," *Garland*, 2022 WL 605726, at *1.

The CMUs "provide an inmate housing unit environment that enables staff to more effectively monitor communication between inmates in CMUs and persons in the community," in order "to ensure the safety, security, and orderly operation of correctional facilities, and protection of the public." 28 C.F.R. § 540.200. The CMUs are essentially "self-contained general population housing unit[s]" where inmates "have access to common areas for up to sixteen hours a day, recreational facilities, exercise equipment, and the library" and can "keep personal property in their cells, participate in religious services, receive educational and professional training, and be designated for work assignments." *Lynch*, 833 F.3d at 247 (alteration in original). Communications and contact between inmates in the CMUs and the outside world, however, "are extremely limited and closely monitored." *Garland*, 2022 WL 605726, at *1.

As relevant here, 28 C.F.R. § 540.204 imposes "[t]elephone communication limitations" on CMU inmates, including communications between the inmate and the inmate's attorney. Specifically, 28 C.F.R. § 540.204(b) provides the following:

2

Unmonitored telephone communication is limited to privileged communication with the inmate's attorney. Unmonitored privileged telephone communication with the inmate's attorney is permitted as necessary in furtherance of active litigation, after establishing that communication with the verified attorney by confidential correspondence or visiting, or monitored telephone use, is not adequate due to an urgent or impending deadline.

In the event an inmate is approved to make an unmonitored call to an attorney, BOP staff are directed "to make reasonable efforts to verify unmonitored calls placed on an inmate's behalf are to an attorney's office." *See* Compl., Ex. D, Program Statement 5264.08, Inmate Telephone Regulations ("Program Statement 5264.08"), ECF No. 1-4 at 3. Other than unmonitored telephone calls, which uses are limited by 28 C.F.R. § 540.204(b), a CMU inmate may communicate with his attorney via confidential mail, confidential in-person conferences, or monitored telephone calls, *see* 28 C.F.R. §§ 540.203(c), 540.204(b).

## B.     Factual Background

On December 22, 2008, after a two-month jury trial, a jury sitting in the United States District Court for the District of New Jersey convicted Dritan Duka and four co-defendants of conspiracy to kill U.S. military members in an armed attack, and for violating various weapons statutes. During the trial, the government had presented evidence suggesting that one or more members of the conspiracy had conducted surveillance at several U.S. military bases, obtained a detailed map of Fort Dix, performed firearms training at a shooting range in the Poconos, watched and shared videos of violent jihadist activities and of lectures advocating violent jihad against non-Muslims, and acquired automatic firearms and rocket-propelled grenades. *See Duka v. United States ("Duka II")*, 27 F.4th 189, 191 (3d Cir. 2022); *Duka v. United States ("Duka I")*, No. 13-cr-3664, 2015 WL 5768786, at *2 (D.N.J. Sept. 30, 2015). On April 28, 2009, Dritan Duka received a life sentence. *Duka I*, 2015 WL 5768786, at *3. His co-defendants received similar lengthy sentences. *Id.*

3

"In the intervening years since their sentencing, [Dritan Duka and his co-defendants] have launched several unsuccessful challenges to their convictions," including "numerous challenges to their convictions on direct appeal," a 2013 federal habeas petition under 28 U.S.C. § 2255, a 2016 motion to vacate their 18 U.S.C. § 924(c) convictions, and a 2019 motion for relief from judgment under Federal Rule of Civil Procedure 60(b)(6). *See Duka II*, 27 F.4th at 192. At each turn, Dritan Duka's challenges to his conviction have been rejected. *Id.*

Most recently, Dritan Duka, with the aid of counsel, filed a compassionate release motion in the U.S. District Court for the District of New Jersey. *See* Def.'s Mot. Modification of Sentence Based on Extraordinary and Compelling Reasons, *United States v. Dritan Duka*, No. 7-cr-459 (D.N.J. Oct. 17, 2025), ECF No. 57. During the preparation of the motion, disputes arose between Dritan Duka's counsel and prison officials over the permitted methods of attorney-client communications, resulting in this instant, separate suit against the Director of BOP.

The specific facts, as alleged in the complaint, are as follows. *See Casey v. McDonald's Corp.*, 880 F.3d 564, 567 (D.C. Cir. 2018) ("On a motion to dismiss, we must assume that the allegations of the complaint are true."). Dritan Duka is a federal prisoner in the BOP. At the time he filed this action, Duka was a CMU inmate housed at the FCI in Terre Haute, Indiana. Complaint ("Compl.") ¶ 9, ECF No. 1. Plaintiff's complaint does not challenge his placement into the CMU.

On June 26, 2024, Dritan Duka's counsel emailed a BOP officer "request[ing] a legal call" with Duka "in order to start preparing a compassionate release motion for him." *Id.* The relevant "Case Manager" at FCI Terre Haute responded the following day, "stating that the call would not be approved because 'only imminent, urgent matters with an active case are appropriate for legal calls.'" *Id.* (citing Compl., Ex. A at 3, Jun. 27, 2024, Email from Bradley Kink, SCU/CMU Case Manager, to Kathy Manley ("Kink Email"), ECF No. 1-1). "[C]ounsel for the prison," in a separate

email, "cit[ed] 28 CFR 540.204 in support of the denial of the call." *Id.* (citing Pls.' Compl., Ex. A at 4, Jun. 27, 2024, Email from Adin Rogers, Attorney Advisor, to Kathy Manley ("Rogers Email"), ECF No. 1-1).

Dritan Duka's counsel represents that she "is in upstate New York" and cannot "feasibl[y]" travel to Terre Haute for a legal visit. *Id.* ¶ 10. Counsel thus resorted to communicating with defendant through "legal mail," *id.* ¶ 11, and eventually filed a compassionate release motion for Dritan Duka, which is currently pending before a different judge, Pl.'s Opp'n at 2. Counsel views legal mail as "a very time consuming and inadequate way to communicate because there is no way to have a real back-and-forth conversation," and asserts that "[t]he denial of legal calls has been a huge impediment to [her] work for [Dritan Duka] and [her] other clients, and has been detrimental to [Dritan Duka]. Compl. ¶ 11. Dritan Duka, in a declaration filed with his complaint, attested that he "wanted—and still wants—to have one or more legal calls with [his] attorney." Compl., Ex. B, Decl. of Dritan Duka ("Duka Decl.") ¶ 2, ECF No. 1-2.

## C.    Procedural Background

On May 7, 2025, after pursuing administrative remedies and receiving a final denial of "[h]is Central Office Administrative Remedy Appeal," *id.* ¶¶ 6, 12, plaintiff Dritan Duka filed the instant complaint in the United States District Court for the Southern District of Indiana against T. Rule, Warden of FCI Terre Haute, and William Marshall, Director of BOP. *See* Compl., ECF No. 1. Plaintiff's complaint challenged BOP's denial of his request for unmonitored telephone calls with his attorney, in two claims, under the First and Fourteenth Amendments, *id.* ¶¶ 25-27 ("First Claim: Violation of First Amendment"), ¶¶ 28-29 ("Second Claim: Violation of Fourteenth Amendment"), and as relief sought, *inter alia*, "the ability to have unmonitored calls with his attorneys at least once a month, with the possibility of more frequent access if necessary in a particular situation," *id.* (Relief Requested).

5

Shortly after plaintiff filed his complaint, plaintiff was transferred from FCI Terre Haute in Indiana to FCI Cumberland in Maryland, where is he currently housed, resulting in the dismissal of former defendant, T. Rule, Warden of FCI Terre Haute, from the case. *See* Order Screening Complaint, Dismissing Def. Rule, and Transferring Venue as to Remaining Claims, ECF No. 15. On September 15, 2025, the case was transferred from the U.S. District Court for the Southern District of Indiana to this district, "because that is where BOP Director Marshall resides," "the relevant actions and decisionmakers in this case were or are located in the District of Columbia," and the "District . . . has particularized expertise in the law governing federal administrative rules and regulations." *Id.* at 7-8.

On January 27, 2026, defendant moved to dismiss the Complaint in this Court, *see* Mot. to Dismiss & Mem. Supp. Thereof ("Def.'s Mot."), ECF No. 21, which motion is now ripe for consideration, *see* Affirmation/Mem. of Law Opposing Dismissal ("Pl.'s Opp'n"), ECF No. 22; Def.'s Reply Supp. Mot. to Dismiss ("Def.'s Reply"), ECF No. 23.

## II.     LEGAL STANDARDS

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), a plaintiff must establish that the court has subject matter jurisdiction over the claims asserted. *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). "Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (internal quotation marks omitted). A court deciding a Rule 12(b)(1) motion must accept as true all uncontroverted material factual allegations contained in the complaint and "'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged' and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. F.D.I.C.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972

(D.C. Cir. 2005)).  Inferences unsupported by facts alleged in the complaint or amounting merely to legal conclusions, however, need not be accepted.  *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  Motions to dismiss for lack of standing arise under Rule 12(b)(1).  *See Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge[] [his or her] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the plaintiff pleads factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).  When considering a Rule 12(b)(6) motion, a court must "accept the operative complaint's well-pleaded factual allegations as true and draw all reasonable inferences in the [plaintiff's] favor." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020).  In considering a Rule 12(b)(6) motion, a court may also consider "any documents either attached to or incorporated in the complaint and matters of which the court may take judicial notice." *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017) (citation and alteration omitted).  Factual disputes, however, generally cannot be resolved on a motion to dismiss, as a court's "role is not to speculate about which factual allegations are likely to be proved after discovery." *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 70 (D.C. Cir. 2015).

## III.    DISCUSSION

Defendant's motion to dismiss for lack of standing, under Rule 12(b)(1), is discussed first, followed by defendant's motion to dismiss for failure to state a claim under Rule 12(b)(6).  As explained below, defendant has standing to bring his claims and, with the exception of plaintiff's

Fourteenth Amendment claim, defendant's arguments for dismissal for failure to state a claim are not persuasive.  Thus, defendant's motion to dismiss is largely denied.

### A.    Federal Rule of Civil Procedure 12(b)(1)

As a threshold matter, defendant argues that plaintiff's complaint must be dismissed for lack of standing under Rule 12(b)(1).  To establish standing, a plaintiff "must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  Defendant challenges only plaintiff's satisfaction of the injury-in-fact element of standing, arguing that plaintiff's complaint failed to demonstrate that "the alleged shortcomings in not being provided an unmonitored call with an attorney outside of an active litigation hindered his efforts to pursue a legal claim."  Def.'s Mot. at 6 (internal quotation marks and alteration omitted).  Defendant's argument is unpersuasive.

Plaintiff has established injury in fact.  To make such a showing, plaintiff must allege that he has "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted).  Here, plaintiff alleges that he wished to speak with his attorney to prepare his compassionate release motion, that he had requested and was denied an unmonitored phone call with his attorney, and that "[t]he denial of legal calls has been a huge impediment to [his attorney's] work."  Compl. ¶¶ 9, 11.  Further, although "a compassionate release motion was eventually filed seeking Petitioner's release (and is currently pending)," plaintiff's counsel represents that her "effort was hindered because it was not possible for [plaintiff] to have an unmonitored call with counsel to discuss the preparation of said motion."  Pl.'s Opp'n at 2 (emphasis omitted).  Plaintiff, in a declaration filed with his complaint, has also attested that he "wanted—and still wants—to have one or more legal calls with [his] attorney."  Duka Decl. ¶ 2.

Merely because the compassionate release motion was ultimately filed does not show a lack of harm but only that the harm has already been suffered by plaintiff in efforts to overcome the additional hurdles presented to communicate effectively with counsel and, further, continue to be felt. These asserted harms are sufficiently concrete, particularized, and actual to establish a cognizable injury in fact.

Defendant's reliance on *Lewis v. Casey*, 518 U.S. 343 (1996), is puzzling since this decision supports rather than undercuts plaintiff's standing in this case. *Lewis* concerned a class action brought by inmates of various prisons challenging the alleged inadequacies of their prisons' library facilities and legal assistance programs. *Lewis*, 518 U.S. at 348. There, the Supreme Court explained that the plaintiff-inmates cannot establish a legally cognizable injury merely by arguing that the "prison's law library or legal assistance program [was] subpar in some theoretical sense." *Id.* at 351. The Court reasoned that to demonstrate an actual injury, "the inmate . . . must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* Here, unlike the "theoretical" harm discussed in *Lewis*, plaintiff has gone the requisite "one step further" by pursuing an actual legal claim—his compassionate release motion—and alleging that the denial of legal calls and the inability to have a "real back-and-forth conversation" with his attorney has hindered his efforts to pursue that claim and continues to do so.[1]

Defendant's motion to dismiss under Rule 12(b)(1) for lack of standing is therefore denied.

---

[1] Defendant also relies on *Long v. Vaughan*, 652 F. App'x 176 (4th Cir. 2016), *see* Def.'s Mot. at 7, but that case was decided at summary judgment on the merits, not on standing grounds.

B.      **Federal Rule of Civil Procedure 12(b)(6)**

Defendant challenges both claims asserted in the Complaint for failure to state a claim, under Rule 12(b)(6).[2]  As to his First Amendment claim, plaintiff contends that 28 C.F.R. § 540.204(b), "as applied by the Defendants . . . violates the First Amendment which provides for prisoners to have confidential consultations with attorneys."  Compl. ¶ 26.  Defendant, in response, argues that "[p]laintiff's placement in the CMU, which he does not challenge, establishes that his communications present security concerns, and that limitations on such communications are 'reasonably related to [the] legitimate penological interests' of prison security and resource management."  Def.'s Mot. at 12 (quoting *Amatel v. Reno*, 156 F.3d 192, 196 (D.C. Cir. 1998)).  For the following reasons, defendant's motion to dismiss plaintiff's First Amendment claim under Rule 12(b)(6) is denied.

"[L]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."  *Pell v. Procunier*, 417 U.S. 817, 822 (1974) (citation omitted).  In the First Amendment context, prisons may regulate inmate speech so long as "the regulations are 'reasonably related to legitimate penological interests.'"  *Thornburgh v. Abbott*, 490 U.S. 401, 405 (1989) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).  Determining whether a regulation is reasonably related to a legitimate

---

[2]      Plaintiff asserts a Fourteenth Amendment due process claim in his complaint, alleging that 28 C.F.R. § 540.204(b), "as applied by the Defendants . . . violates the Fourteenth Amendment right of access to the courts." Compl. ¶ 29. Defendant correctly points out that the Fourteenth Amendment does not apply to the federal government, *see San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 542 n.21 (1987) ("The Fourteenth Amendment applies to actions by a State."); *see also Powers-Bunce v. D.C.*, 479 F. Supp. 2d 146, 153 (D.D.C. 2007) ("The Due Process Clause of the Fourteenth Amendment reads in pertinent part: 'No State shall . . . deprive any person of life, liberty, or property without due process of law . . . .' Thus, by its terms, the Fourteenth Amendment applies only to the States; it does not apply to the Federal Government or the District of Columbia."), and plaintiff offers no response to this argument, *see generally* Pl.'s Opp'n (no mention of Fourteenth Amendment).  Defendant's argument is thus treated as conceded, and defendant's motion to dismiss plaintiff's Fourteenth Amendment claim is accordingly GRANTED.  *See Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014) ("[I]f a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded.").

penological interest requires the application of a four-factor test: a court must ask (1) whether there is "a valid, rational connection between the prison action and the legitimate government interest put forward to justify it," *Turner*, 482 U.S. at 89 (internal quotation marks omitted); (2) "whether there are alternative means of exercising the right that remain open to prison inmates," *id.* at 90; (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," *id.*; and (4) whether there is an "absence of ready alternatives," *id.* "[T]his 'reasonable relation' test [is] 'very similar,' if not identical, to rational basis review." *Lynch*, 833 F.3d at 259 (quoting *Amatel v. Reno*, 156 F.3d 192, 198-99 (D.C. Cir. 1998)). "In order to make this [four-factor] inquiry, [courts] need information." *Shimer v. Washington*, 100 F.3d 506, 509-10 (7th Cir. 1996). The prison administration must proffer some evidence beyond "reflexive, rote assertions" to support its restriction of inmates' constitutional rights. *Id.* at 510.

Accordingly, unless the justification for the policy is "self-evident," *see, e.g.*, *Israel v. Cohn*, 6 F. App'x 348, 351 (7th Cir. 2001) (so holding regarding prison policy limiting inmate phone calls to those on pre-approved lists), the question of whether a regulation is reasonably related to a legitimate penological interest is often resolved at summary judgment or trial, rather than at the pleading stage. *See Lashbrook v. Hyatte*, 758 F. App'x 539, 542 (7th Cir. 2019) reversing dismissal of inmate's First Amendment claim because, "at this prediscovery stage, there is no evidentiary record from which the judge could evaluate the prison's resource concerns, the impact on prison staff of [the inmate's] request for confidential attorney-client calls, or the viability of other means of communicating with his attorney"); *cf. Lynch*, 833 F.3d at 259 ("[O]ur inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail

11

at the summary judgment stage." (citation omitted)).  Indeed, defendant's own cited cases largely demonstrate as much.  Def.'s Mot. at 11 (citing, *e.g.*, *Aref v. Holder*, No. 10-cv-0539, 2015 WL 3749621, at *9 (D.D.C. Mar. 16, 2015) (deciding at summary judgment inmates' constitutional challenges to their CMU designation and the CMUs' conditions); *Searcy v. United States*, 668 F. Supp. 2d 113, 122 (D.D.C. 2009) (deciding at summary judgment inmate's challenge to a BOP policy "prohibiting an inmate from sharing his telephone access code with another inmate"); *see also*, *e.g.*, *Turner*, 482 U.S. at 89 (concerning a district court's findings, after a bench trial, as to the constitutionality of prison's mail and marriage regulations)).[3]

Here, the justification for the challenged regulation under the *Turner* four-factor test is not "self-evident," *Israel*, 6 F. App'x at 351, and defendant has provided no illumination into the restriction on legal calls for CMU inmates besides generalized assertions of "security concerns," Def.'s Mot. at 12.  With respect to relevant exhibits, all that has been provided are defendant's citation to and application of 28 C.F.R. § 540.204, without further explanation as to the purpose of the policy.  *See* Compl., Ex. A, Kink Email; *id.*, Ex. A, Rogers Email; *id.*, Ex. D, Program Statement 5264.08.  On this record, the Court is thus "reduced to speculation when not provided with evidence, and, having speculated, find[s] it difficult to establish a connection between the prison administration's unsubstantiated justifications and its policy."  *Shimer*, 100 F.3d at 510.

Defendant further argues that dismissal should be granted because plaintiff has adequate alternative means of communicating with his attorney—namely, through confidential in-person visits and legal mail, and monitored telephone calls.  On a motion to dismiss, however, any factual disputes generally must be resolved in favor of plaintiff, who is granted the benefit of all inferences

---

[3]    Defendant also cites several decisions in procedural postures not applicable here.  *See, e.g.*, *Washington v. Reno*, 35 F.3d 1093 (6th Cir.1994) (preliminary injunction); *Aswegan v. Henry*, 981 F.2d 313 (8th Cir.1992) (preliminary injunction); *Akers v. Sproul*, No. 22-cv-2192, 2023 WL 2814864 (S.D. Ill. Apr. 6, 2023) (a show cause motion filed in relation to a habeas petition).

that can be derived from the facts alleged.  *See Am. Nat'l Ins. Co.*, 642 F.3d at 1139.  Here, plaintiff asserts that in-person visits are economically infeasible for his attorney, legal mail is too time consuming, and monitored phone calls do not provide plaintiff the "free[dom] to discuss aspects of his case and his prison conditions."  Compl. ¶¶ 10-11.  Given the disputed facts, a determination as to the adequacy of alternative means of communication at the pleading stage would be premature.

To be clear, no view is provided on the ultimate merits of plaintiff's claim.  Rather, the defendant's motion to dismiss under Rule 12(b)(6) is denied because, at this early stage in the proceedings, plaintiff's complaint states a First Amendment claim that is "plausible on its face." *Twombly*, 550 U.S. at 570.

## IV.    CONCLUSION

For the foregoing reasons, defendant's motion to dismiss the complaint, ECF No. 21, is DENIED with respect to the motion to dismiss under Rule 12(b)(1) for lack of standing and under Rule 12(b)(6) for failure to state a claim under the First Amendment, but GRANTED with respect to the motion to dismiss under Rule 12(b)(6) for failure to state a claim under the Fourteenth Amendment.    An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date:  April 3, 2026

_____
**BERYL A. HOWELL**
United States District Judge

13